IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JASON MEDRANO,
*PLAINTIFF*

V.

Case No. 5:19-cv-549

HON. JAVIER SALAZAR, SHERIFF,
BEXAR COUNTY SHERIFF'S OFFICE,
*DEFENDANT*

**PLAINTIFF'S ORIGINAL COMPLAINT
& JURY DEMAND**

**Introduction**

This civil action arises from Defendant's violations of Plaintiff's civil rights on or about April 30, 2019 in Bexar County, Texas. This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §2201, and the First and Fourteenth Amendments of the United States Constitution. Plaintiff also seeks prohibitory and mandatory injunctive relief in the form of a Temporary Restraining Order and Permanent Injunction. This is a civil rights action challenging as unconstitutional the above-named Defendant's violation of Plaintiff's First Amendment rights.

**Jurisdiction and Venue**

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, and §1343. Venue in this Court is appropriate under 28 U.S.C. §1391(b).

**Plaintiff**

2.      Plaintiff Jason Medrano (hereinafter "Medrano") is an adult resident of San Antonio, Bexar County, Texas.

**Defendant**

3.      Defendant Javier Salazar is the elected Sheriff of the Bexar County Sheriff's Office, and is sued in his official capacity. He acted under color of law. He may be served with process at the Bexar County Sheriff's Office, 200 North Comal Street, San Antonio, TX 78207, or wherever he may be found.

**Introduction**

4.      The Bexar County Sheriff's Office improperly input Medrano into the TXGANG database after a traffic stop for an improper lane change and following another vehicle too closely in 2015, during which Medrano was wearing a leather vest indicating membership in the Leathernecks Motorcycle Club. Since then, the sheriff's office refuses to remove Medrano from the gang database. The Leathernecks are not a criminal street gang according to standards set by law enforcement experts on motorcycle clubs. The inclusion of Medrano into the database is defamatory, and it is currently preventing Medrano from getting onto military bases, where he is applying for jobs.

**Statement of Facts**

*Medrano Failed to Signal a Turn & Was Entered Into the TXGang Database*

5.      In December of 2015, Medrano was pulled over for making an improper lane change by a Bexar County Sheriff's Deputy Luna, Badge Number 354. Medrano was riding a motorcycle and wearing a vest with patches on it that said "Leathernecks," and "Marines," among other patches.

6. At that time, Medrano was in the Leathernecks Motorcycle Club with a membership of Veterans that served in the Marines. *See Exhibit 3*, hereby incorporated by reference, which can also be found at www.leathernecksmc.com. Medrano himself was honorably discharged from the Marines after serving his country in combat in Iraq, for which he was afforded several commendations and medals. *Exhibit 2*, hereby incorporated by reference.

7. During the 2015 traffic stop, Deputy Luna pulled over both Medrano and another Leathernecks Motorcycle Club member together. Deputy Luna told Medrano that he was inputting Medrano into the TXGANG database because of a sticker that was on Medrano's motorcycle. Deputy Luna did not input the other Leathernecks Motorcycle Club member into the TXGANG database during that stop. Both were wearing Leathernecks Motorcycle Club vests with the same patches.

8. Medrano attempted to explain to Deputy Luna that the Leathernecks Motorcycle Club was not a support club of any criminal street gangs, was instead a club for Veterans that served in the Marines, but Deputy Luna persisted that the sticker on Medrano's motorcycle indicated he was a gang member.

9. Medrano attempted to file a complaint against Deputy Luna after that stop with the Internal affairs division of the Bexar County Sheriff's Office. In January of 2016, he was permitted to write a statement, and representatives of IA indicated that someone would get back with him.

10. A few days later, a lieutenant with the sheriff's office called Medrano on the telephone, asking if Medrano wanted Deputy Luna to receive a verbal or written warning. Medrano indicated he preferred written. Medrano has not heard from the sheriff's office since that January 2016 phone call regarding the status of that internal affairs complaint.

*Medrano's Job Application on a Military Base Is Hampered by the TXGang Database Entry*

11.     Medrano is an electrician by trade. He has been employed as an electrician in the private sector for eight years. He makes an hourly wage, but he does not have retirement, affordable healthcare benefits, or sick leave. Medrano and his wife have three children that are 18, 17, and 8 years old.

12.     In April of 2019, Medrano heard from a friend that Fort Sam Houston, Joint Base San Antonio, in Bexar County, TX, was hiring electricians. Medrano immediately began the application process for that job, which would come with retirement, affordable healthcare benefits, sick leave, and vacation time. Because Medrano was in the Marines, his time in the service would count toward retirement. On April 22, 2019, Medrano went to a job fair for the position, and he was immediately taken to a supervisor to discuss the job. Within 20 minutes of being at the job fair, Medrano was interviewed for the open electrician position. He was then told to come in and have his fingerprints taken for a background check on April 30, 2019.

13.     Medrano went to the military base on April 30, 2019 to have fingerprints taken. *Exhibit 1*, hereby incorporated by reference. When he arrived, he stopped at the visitor center which sits immediately outside the locked gate to enter the base. To get onto the base, one must have a badge to do so, or stop at the visitor center for a visitor pass. He provided the military and civilian staff in the visitor center his valid Texas identification, indicating he was there to see HR. When the visitor center personnel ran his information, they informed Medrano that he could not enter the base because he is in the TXGANG database.

14.     Medrano explained that he was *formerly* in the Leathernecks Motorcycle Club, he was a

Marine, and he should not be in the TXGANG database because the Leathernecks are not a gang. They are not "1%ers" but are just a club for Marine Veterans. Medrano has not been in the Leathernecks Motorcycle Club for at least two years prior to this job application process.

15. The staff at the visitor center looked up the Leathernecks Motorcycle Club, asked Medrano some questions, and then gave him a visitor pass to enter the base. *Exhibit 1*.

16. The visitor center staff also told Medrano that he should go to the Texas Department of Public Safety to challenge his inclusion in the TXGANG database.

17. Medrano entered the base, had his fingerprints taken, and was told to return again on May 15, 2019 to do a physical examination.

18. Medrano returned to the base on May 15, 2019 for his physical, and stopped at the visitor center to check-in and get a visitor pass. Again, the staff there first indicated they could not let him onto the base because he was coming up as a gang member in the TXGANG database. Medrano explained, just as he had on April 30th, and after review, the staff again provided Medrano a visitor pass. *Exhibit 1*.

19. Medrano is now in limbo: He has interviewed for the job, passed a background check, and passed a physical examination. He has not yet been informed about whether he has the job. The last time he was on base, they indicated that his inclusion in the TXGANG database may prevent him from getting a badge to pass through security onto the base, and if that is true, Medrano's inclusion in the TXGANG database will cost him this job.

*Medrano Asked to Be Removed from TXGang – He Was Denied*

20. After his trouble getting on base on April 30, 2019, Medrano contacted the Texas Department of Public Safety to ask for his removal from the TXGANG database. They sent him to

the Bexar County Sheriff's Office. The Bexar County Sheriff's Office records section referred Medrano back to DPS. Then, Medrano tried to contact the internal affairs division of the Bexar County Sheriff's Office. Someone there told him that they would take his information and get back to him. When they did not call him, Medrano contact IA again on May 15, 2019 and was told that someone from the gang unit said he must wait 5 years for his name to "fall off" the database.

*Leathernecks Are Not Considered a "Gang" by Law Enforcement Experts*

21. Texas courts have admitted testimony of law enforcement that call themselves Outlaw Motorcycle Gang experts. *See e.g. Exhibit 4*, hereby incorporated by reference. ATF Agent Doug Pearson is one of those, and he has testified in trials in Texas on more than one occasion for the state, never for the defense. *Exhibit 5*, hereby incorporated by reference.[1] He has specifically testified about Leathernecks Motorcycle Club, indicating that it is a military group, comprised of Veterans; so long as the Leathernecks do not wear a "1%er" or support club patch, they are not a criminal street gang. *Id*. at 67.

22. Agent Pearson has testified that there are motorcycle clubs that are not involved in criminal activity. *Exhibit 5*, at 23, 27. He has testified that motorcycle clubs that call themselves "1%er" clubs are criminal street gangs. *Id*., at 27-28. He has also testified that any motorcycle club with a patch on their vests that is round, placed near the heart, and indicates that the wearer is in a support

---

[1] Undersigned counsel does not agree with Pearson's methodology or conclusions. For the purpose of this lawsuit alone, Pearson's testimony reveals law enforcement training and experience on motorcycle clubs. For the purpose of this lawsuit, Pearson's expertise is important to show that even law enforcement experts that only testify for the state would not conclude that a Leathernecks Motorcycle Club member is a gang member based on membership alone without additional information on criminal activity.

club is a criminal street gang. *Id.*, at 37-38. This is called a "heart cookie" patch. *See e.g. Exhibit 6*, hereby incorporated by reference.

23. Without a "1%er" patch or a heart cookie patch, Pearson's expert opinion is that one cannot assume that a member of any given motorcycle club is a gang member without additional information on criminal activity. *Exhibit 5*, at 41-44. Pearson has testified that there are law-abiding motorcycle clubs, and law enforcement cannot assume that a motorcycle club is a criminal street gang unless they are in a "1%er" club or a support club of a "1%er" club, indicated by the heart cookie patch. *See Id.*, at 51.

24. The Leathernecks Motorcycle Club is not a "1%er" club, nor does the club have a heart cookie patch. The Leathernecks are not a support club for any "1%er" club. *See e.g. Exhibit 7*, hereby incorporated by reference, showing neither heart cookie patch nor "1%er" patch.

25. Stated differently: Law enforcement believe that they can judge a book by its cover. They believe they can conclude that a motorcycle club is a "criminal street gang" based on the patches worn on vests. If the patches say "1%er" or indicate that the club is a support club for a "1%er" club, law enforcement believes they can conclude that the wearer of those patches is in a criminal street gang *even if they have no information about criminal activity* for that motorcycle club. If we assume that law enforcement is correct about their patch-interpretation, the Leathernecks Motorcycle Club is **not** a criminal street gang by their own standard.

26. Texas Code of Criminal Procedure article 61.02 provides the statutory authority for people to be identified and compiled into the intelligence database referenced in this complaint as the TXGANG database.

27. The Bexar County Sheriff's Office input Medrano into the TXGANG database for no

legitimate law enforcement reason, as even law enforcement experts on motorcycle clubs, like ATF Agent Pearson who is a court-recognized expert that only testifies for the state, would not conclude that members of the Leathernecks Motorcycle Club are gang members. Texas Penal Code §71.01(d) provides that "'criminal street gang' means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." While the Leathernecks Motorcycle Club has three or more members with a common identifying sign or symbol, it does not continuously or regularly associate in criminal activities, nor does the Bexar County Sheriff's Office have any reason to believe that the Leathernecks continuously or regularly engage in criminal activities.

28. Medrano's inclusion in the TXGANG database was done without regard to any law enforcement standards or intelligence/information. It was done without affording Medrano Due Process to challenge the inclusion before or after it was made. Medrano attempted to have himself removed from the database and Bexar County Sheriff's Office refused to do so.

29. By law enforcement's own standards and per their own experts on motorcycle club culture, Medrano should not be in the TXGANG database.

30. Bexar County Sheriff's Office refusal to remove him from the TXGANG database means that any time Medrano's identification is checked by security or law enforcement, he will appear to be in a criminal street gang, affecting his reputation, ability to get a job, or even get onto a military base when Medrano spent nine years in the Marine Corps. and served his country in combat in Iraq.

**Causes of Action**

31. Plaintiff incorporates by reference all the foregoing paragraphs, and asks that insofar as the following theories of liability include additional factual allegations, those allegations be taken as

8

true, and further alleges as follows:

32.     Defendant intentionally, knowingly, recklessly, or with deliberate indifference to the rights of Plaintiff input Plaintiff into TXGANG without any reason to believe he is a member of a criminal street gang, violating Plaintiff's right to Substantive Due Process.

33.     Defendant intentionally, knowingly, recklessly, or with deliberate indifference to the rights of Plaintiff input Plaintiff into TXGANG and refused to remove him, violating Plaintiff's right to Procedural Due Process.[2]

34.     Defendant intentionally, knowingly, recklessly, or with deliberate indifference to the rights of Plaintiff input Plaintiff into TXGANG not based on criminal activity, but based purely on association, violating Plaintiff's First Amendment right to associate.

35.     Defendant is intentionally committing the common law tort of defamation against Plaintiff by leaving the TXGANG entry of Plaintiff, knowing that said entry is being used against Plaintiff in April and May of 2019.

## TEMPORARY RESTRAINING ORDER / INJUNCTION

36.     The TXGANG database entry has been a bar for Medrano's sought-after employment on a military base, as each time he returns for a new part of the employment process, he is initially barred from entering. Plaintiff asks for a TRO directed to Defendant, requiring Plaintiff's removal from the TXGANG database while this lawsuit is pending and prohibiting Defendant from re-inputting Plaintiff into the database without the Court's permission.

---

[2] See Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("Yet certainly where the State attaches a 'badge of infamy' to the citizen, due process comes into play. […] 'The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'").

9

37. Plaintiff will suffer an irreparable injury if the requested TRO is not granted: His right to Due Process is being violated by Defendant's refusal to remove him from the TXGANG database, which is affecting his ability to get a job on base. If Medrano loses the job because of his inclusion in the database, there is no way to know when another position like this will be available, offering the types of benefits and retirement that he does not now have in the private sector.

38. There is no adequate remedy at law should this TRO be denied, as the calculation of damages would be difficult. Missing an opportunity for retirement benefits and affordable healthcare for a family of five would be an almost immeasurable loss. Further, the judicial remedy provided for in Texas Code of Criminal Procedure Chapter 61, article 61.09 is unconstitutional.

   A. Under article 61.09, a person challenging their inclusion in the TXGANG database may file a petition in district court where he/she lives.

   B. The district court is then to conduct an *in camera* review of the information supporting the petitioner's inclusion into the database. Article 61.09(b).

   C. The district court is supposed to determine from the *in camera* review that the information is accurate using the reasonable suspicion standard. Article 61.09(b)(1).

   D. This "process" is not Due Process. It does not provide the petitioner the ability to affirmatively challenge any of the alleged facts used to classify him as a member of a criminal street gang. Indeed, the petitioner is not permitted to even **see** the evidence used against him. The "reasonable suspicion" standard is the lowest standard in our justice system, and is only the standard for minor, brief, temporary, and limited incursions into people's privacy. *Terry v. Ohio*, 392 U.S. 1 (1968). Permitting the state to stigmatize someone as a gang member for five years after an *in camera*

review to see if there is reasonable suspicion to believe the information is accurate may as well be no process at all. A five-year stigma is much more severe than a limited pat-down of clothing, or being briefly detained to determine if the detainee committed a traffic offense. Even people who have been arrested for Driving While Intoxicated receive more process before the Texas Department of Public Safety temporarily suspends their driver's license for a mere 90 days. *See* Tex. Trans. Code Chapter 524. If someone charged with DWI is entitled to written notice and a hearing, wherein he gets to cross-examine the officer that arrested him, before a meager 90-day driver's license suspension is imposed, surely one is entitled to at least that much before enduring the 5-year stigma of being designated a gang member.

E. Moreover, the information that the state district court may review *in camera* includes hearsay. If a reliable confidential informant identified the petitioner as a member of a criminal street gang and an unreliable confidential informant confirmed it, the petitioner can be entered into the gang database. Tex. Code Crim. Proc. Art. 61.02(c)(2)(C)(ii)&(iii). The petitioner is not given a right to challenge that hearsay, as he is not permitted to even see the information before the court reviews it, nor is he given an opportunity to cross-examine law enforcement about the source of the information.

F. Due Process basics include Notice and an Opportunity to be Heard.[3] Chapter 61 of

---

[3] Bell v. Burson, 402 U.S. 535, 542 (1971).

the Texas Code of Criminal Procedure affords people neither notice nor a meaningful opportunity to be heard.

39. There is a substantial likelihood of success on the merits, as the Supreme Court has repeatedly ruled that the state cannot punish people or ban them from employment based solely on membership with an unpopular group.[4]

40. Defendant would not be injured by a TRO, as the inclusion into the TXGANG database is not supported by fact, nor is it guided by any law enforcement standard.

41. This TRO would be in the public interest, as it involves the protection of the Constitutional right to Due Process and First Amendment right to associate.

42. Notice is impractical, as Medrano may be losing the job based on his name being in the

---

[4] The Supreme Court long ago "recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984). This right of expressive association "has long been held to be implicit in the freedoms of speech, assembly, and petition." Healy v. James, 408 U.S. 169, 181 (1972). The right to expressive association extends to groups of which the government may not approve, including motorcycle clubs. Piscottano v. Murphy, 511 F.3d 247, 274 (2nd Cir. 2007) (citations omitted); Sammartano v. First Judicial District Court, 303 F.3d 959 (9th Cir. 2002); and see Boy Scouts of America v. Dale, 530 U.S. 640 (2000). The Leathernecks Motorcycle Club engage in community activities like Toys for Tots, Helping Veterans Organizations, Disaster Aid and Relief, and other community involvement. *Exhibit 3*. Membership in the group is an expression of pride in being a Marine Corps. Veteran. *Id*.

Freedom from government sanctions that are based solely on membership with an unpopular group is a clearly established right. United States v. Robel, 389 U.S. 258, 269 (1967). The government may not sanction by barring travel, nor by limiting employment opportunities, based solely on one's membership with an unpopular group. Id.; and Scales v. United States, 367 U.S. 203 (1961). The Supreme Court has long ruled against government action that imposes criminal sanction or denies rights "solely because of a citizen's association with an unpopular organization." Healy v. James, 408 U.S. 169, 185-86 (1972). This is true even if some members of the organization *do* engage in criminal activity. NAACP v. Claiborne Hardware Co., 458 U.S. 886, 920 (1982).

TXGANG database right now.

### Declaratory Relief

43.     Plaintiff realleges the material facts stated in the preceding paragraphs against Defendant. Defendant deprived Plaintiff of Substantive and Procedural Due Process, and is defaming him based on his exercise of his First Amendment rights.  Plaintiff's previous association with the Leathernecks Motorcycle Club was protected by the right to associate found in the First Amendment. Chapter 61 of the Texas Code of Criminal Procedure deprives those entered into Texas's gang database of Due Process. Plaintiff asks for a declaration pursuant to 28 U.S.C. §2201 that his rights arising under the Constitution have been violated by the actions of the Defendant, and that the relevant statute is unconstitutional.

### Damages

44.     Plaintiff suffered special damages incurred or will incur, including but not limited to legal fees, legal expenses, and other related expenses.

### Demand for Jury Trial

45.     Plaintiff respectfully requests a jury trial for any factual disputes.

### Relief

In light of the foregoing, Plaintiff requests Judgment against the Defendant as follows:

1. Temporary Restraining Order and a Permanent Injunction;
2. Reasonable costs, expenses, and attorney's fees pursuant to 42 U.S.C §1988(b), expert fees pursuant to 42 U.S.C. §1988(c);
3. A declaration that Defendant violated Plaintiff's Constitutional rights, pursuant to 28 U.S.C. §2201; and

4. All such other relief to which Plaintiff is entitled.

Respectfully Submitted,
PLAINTIFF

By:
_____/s/ Millie L. Thompson_____
Millie L. Thompson
Texas State Bar Number: 24067974
*The Law Office of Millie L. Thompson*
1411 West Ave., Ste. 100
Austin, Texas 78701
Telephone: (512) 293-5800
Fax: (512) 682-8721
Email: millieaustinlaw@gmail.com

## **CERTIFICATE OF SERVICE**

I, Millie Thompson, do hereby certify that on this the 21st day of May 2019, a true and correct copy of this Plaintiff's Original Complaint was served on Hon. Javier Salazar by email to his assistant Martha Vasquez, mvasquez@bexar.org.

/s/ Millie L. Thompson_____
Millie L. Thompson