IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JASON MEDRANO,
*PLAINTIFF*

   V.

Case No. 5:19-cv-549-DAE

HON. JAVIER SALAZAR, in his official
capacity as Sheriff of Bexar County,

*DEFENDANT*

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**& JURY DEMAND**

**Introduction**

This civil action arises from the improper inclusion of Plaintiff into Texas's gang database, as that gang designation was broadcast to security personnel of Plaintiff's then-potential employer on April 30, 2019 in Bexar County, Texas. This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §2201, and the First and Fourteenth Amendments of the United States Constitution. Plaintiff seeks declaratory relief that 1) Plaintiff's inclusion into the TXGANG database violates his right to Due Process and First Amendment right to associate, 2) the Bexar County Sheriff's Office failed to follow Texas Code of Criminal Procedure article 67.202 when Plaintiff attempted to challenge his inclusion into the gang database, violating Plaintiff's right to procedural Due Process, 3) Defendant Sheriff Salazar failed to adequately train his deputies on what constitutes a criminal street gang and failed to train them on the process to remove people from the

1

gang database, violating Plaintiff's right to procedural Due Process, 4) Texas Code of Criminal Procedure article 67.054(b)(2)(C) is unconstitutionally vague and overbroad, and 5) Texas Code of Criminal Procedure articles 67.202 and 67.203 violate substantive and procedural Due Process.

## Jurisdiction and Venue

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, and §1343. Venue in this Court is appropriate under 28 U.S.C. §1391(b).

## Plaintiff

2.      Plaintiff Jason Medrano (hereinafter "Medrano") is an adult resident of San Antonio, Bexar County, Texas.

## Defendant

3.      Defendant Javier Salazar is the elected Sheriff of the Bexar County Sheriff's Office and is sued in his official capacity. He acted under color of law. He has been served and made an appearance in this cause. (Doc. #7).

## Introduction

4.      Medrano is not now, nor has he ever been, a member of a criminal street gang. By law enforcement's own gold standard motorcycle club experts, Medrano should not be classified as a member of a criminal street gang. Nevertheless, the Bexar County Sheriff's Office permitted its deputy to include Medrano into the TXGANG database, classifying him as a gang member, through the end of the year 2020.

5.      A deputy with the Bexar County Sheriff's Office improperly input Medrano into the

TXGANG database after a traffic stop in 2015, during which Medrano was wearing a leather vest indicating membership in the Leathernecks Motorcycle Club. Since then, the sheriff's office refuses to remove Medrano from the gang database. The Leathernecks Motorcycle Club is not a criminal street gang according to standards set by law enforcement experts on motorcycle clubs. The inclusion of Medrano into the database is defamatory, with several adverse legal consequences, including but not limited to subjecting Medrano to a *Terry* pat-down every single time he is stopped for some minor traffic offense, like speeding, *see Arizona v. Johnson*, 555 U.S. 323 (2009), as well as being deprived of his Second Amendment rights pursuant to Texas Penal Code §46.02(a)(2)(C).

**Statement of Facts**

*Medrano Committed a Minor Traffic Infraction & Was Entered into the TXGANG Database*

6.     In December of 2015, Medrano was pulled over for a traffic code violation by a Bexar County Sheriff's Deputy Luna. Medrano was riding a motorcycle and wearing a vest with patches on it that said "Leathernecks," and "Marines," among other patches.

7.     At that time, Medrano was in the Leathernecks Motorcycle Club, which has a membership of Veterans that served in the Marines Corps. *See* www.leathernecksmc.com. Medrano himself was honorably discharged from the Marines after serving his country in combat in Iraq, for which he was afforded several commendations and medals. The Leathernecks Motorcycle Club is involved in a variety of community activities, including charitable works, like Toys for Tots, helping Veterans Organizations, Disaster Aid and Relief, and other community involvement.

8.     During the 2015 traffic stop, Deputy Luna pulled over both Medrano and another Leathernecks Motorcycle Club member together. Deputy Luna told Medrano that he was inputting Medrano into the TXGANG database because of a sticker that was on Medrano's motorcycle.

3

Deputy Luna did not input the other Leathernecks Motorcycle Club member into the TXGANG database during that stop. Both were wearing Leathernecks Motorcycle Club vests with the same patches.

9.      Medrano attempted to explain to Deputy Luna that the Leathernecks Motorcycle Club was not a 'support club' of any criminal street gangs, was instead a club for Veterans that served in the Marines, but Deputy Luna persisted that the sticker on Medrano's motorcycle indicated he was a gang member.

10.     Medrano attempted to file a complaint against Deputy Luna with the Internal Affairs Division of the Bexar County Sheriff's Office. In January of 2016, he was permitted to write a statement, and representatives of Bexar County Sheriff's Office IAD indicated that someone would get back with him.

11.     A few days later, a lieutenant with the sheriff's office called Medrano on the telephone, asking if Medrano wanted Deputy Luna to receive a verbal or written warning. Medrano indicated he preferred written. Medrano has not heard from the sheriff's office since that January 2016 phone call regarding the status of that IA complaint. Bexar County Sheriff's Office did not inform Medrano of any additional steps he should take regarding his inclusion into the TXGANG database. He was not informed that he could take any further legal action to force his removal from the database.

_Medrano's Job Application on a Military Base Was Hampered by the TXGANG Database Entry_

12.     Medrano is an electrician by trade. He was employed as an electrician in the private sector for eight years. He made an hourly wage, but he did not have retirement, affordable healthcare benefits, or sick leave. Medrano and his wife have three children that are 18, 17, and 8 years old.

4

13.     In April of 2019, Medrano heard that Fort Sam Houston, Joint Base San Antonio, in Bexar County, TX, was hiring electricians. Medrano immediately began the application process for that job, which would come with retirement, affordable healthcare benefits, sick leave, and vacation time. Because Medrano was in the Marines, his time in the service would count toward retirement. On April 22, 2019, Medrano went to a job fair for the position, and he was immediately taken to a supervisor to discuss the job. Within 20 minutes of being at the job fair, Medrano was interviewed for the open electrician position. He was then told to come in and have his fingerprints taken for a background check on April 30, 2019.

14.     Medrano went to the military base on April 30, 2019 to have fingerprints taken. When he arrived, he stopped at the visitor center which sits immediately outside the locked gate to enter the base. To get onto the base, one must have a badge to do so, or stop at the visitor center for a visitor pass. He provided the military and civilian staff in the visitor center his valid Texas identification, indicating he was there to see HR. When the visitor center personnel ran his information, they informed Medrano that he could not enter the base because he is in the TXGANG database.

15.     Medrano explained that he was *formerly* in the Leathernecks Motorcycle Club, he was a Marine, and he should not be in the TXGANG database because the Leathernecks are not a gang. They are not "1%ers" but are just a club for Marine Veterans. Medrano has not been in the Leathernecks Motorcycle Club for at least two years prior to this job application process.

16.     The staff at the visitor center looked up the Leathernecks Motorcycle Club, asked Medrano some questions, and then gave him a visitor pass to enter the base.

17.     The visitor center staff also told Medrano that he should go to the Texas Department of Public Safety to challenge his inclusion in the TXGANG database.

18.     Medrano entered the base, had his fingerprints taken, and was told to return again on May 15, 2019 to do a physical examination.

19.     Medrano returned to the base on May 15, 2019 for his physical and stopped at the visitor center to check-in and get a visitor pass. Again, the staff there first indicated they could not let him onto the base because he was in in the TXGANG database, classified as a gang member. Medrano explained, just as he had on April 30th, and after review, the staff again provided Medrano a visitor pass. Medrano has since been hired and holds the appropriate security clearance.

20.     Nevertheless, he suffers from legal disabilities as a result of his continued existence in the TXGANG database. Even though he is otherwise legally allowed to possess a firearm, he cannot carry a handgun in his vehicle because he has been improperly classified as a gang member by Bexar County. Texas Penal Code §46.02(a-1)(2)(C) makes it a criminal offense for someone to carry a handgun in his vehicle if he is a member of a criminal street gang. While Medrano is not a member of a criminal street gang, law enforcement will view him as one whenever he is stopped for a traffic offense based on his name being in TXGANG, subjecting him to arrest and charges for exercising his Second Amendment rights. Further, during any routine traffic stop, he will be immediately seen as armed and dangerous, and subject to *Terry* frisks without regard to what he is doing or how he presents himself because of this improper classification. *See Arizona v. Johnson*, 555 U.S. 323 (2009).

*Medrano Asked to Be Removed from TXGANG – He Was Denied*

21.     After his trouble getting on base on April 30, 2019, Medrano contacted the Texas Department of Public Safety to ask for his removal from the TXGANG database. They sent him to the Bexar County Sheriff's Office. The Bexar County Sheriff's Office records section referred

Medrano back to DPS. Then, Medrano tried to contact the Internal Affairs Division of the Bexar County Sheriff's Office. Someone there told him that they would take his information and get back to him. When they did not call him, Medrano contact IA again on May 15, 2019 and was told that someone from the gang unit said he must wait 5 years for his name to "fall off" the database. He was not informed of any other legal process he may undertake to have his information removed from the database.

*Leathernecks Are Not Considered a "Gang" by Law Enforcement Experts*

22.     Texas courts have admitted testimony of law enforcement that call themselves Outlaw Motorcycle Gang experts. ATF Agent Doug Pearson is one of those, and he has testified in trials in Texas on more than one occasion for the State of Texas, never for the defense. He has specifically testified about the Leathernecks Motorcycle Club, testifying that it is a military group, comprised of Veterans. So long as the Leathernecks do not wear a "1%er" or support club patch, they are not a criminal street gang, according to this State's expert.

23.     Agent Pearson has testified that there are motorcycle clubs that are not involved in criminal activity. He has testified that motorcycle clubs that call themselves "1%er" clubs are criminal street gangs. He has also testified that any motorcycle club with a patch on their vests that is round, placed near the heart, and indicates that the wearer is in a support club is a criminal street gang. This is called a "heart cookie" patch.

24.     Without a "1%er" patch or a heart cookie patch, Pearson's expert opinion is that one cannot assume that a member of any given motorcycle club is a gang member without additional information on criminal activity. Pearson has testified that there are law-abiding motorcycle clubs, and law enforcement cannot assume that a motorcycle club is a criminal street gang unless they are

in a "1%er" club or a support club of a "1%er" club, indicated by the heart cookie patch.

25.     The Leathernecks Motorcycle Club is not a "1%er" club, nor does the club have a heart cookie patch. The Leathernecks are not a support club for any "1%er" club.

26.     Stated differently: Law enforcement believe that they can judge a book by its cover. They believe they can conclude that a motorcycle club is a "criminal street gang" based on the patches worn on vests. If the patches say "1%er" or indicate that the club is a support club for a "1%er" club, law enforcement believes they can conclude that the wearer of those patches is in a criminal street gang *even if they have no information about criminal activity* for that motorcycle club. If we assume that law enforcement is correct about their patch-interpretation, the Leathernecks Motorcycle Club is **not** a criminal street gang by their own law enforcement expert standard.[1]

27.     Texas Code of Criminal Procedure article 67.051 provides the statutory authority for people to be identified and compiled into the intelligence database referenced in this complaint as the TXGANG database. Article 67.054(b)(1) requires that information collected and input into the gang database must "be relevant to the identification of an organization is that is reasonably suspected of involvement in criminal activity." Bexar County Sheriff's Office has no facts upon which to base a conclusion that the Leathernecks Motorcycle Club is reasonably suspected of involvement in criminal activity.

28.     The Bexar County Sheriff's Office input Medrano into the TXGANG database for no legitimate law enforcement reason, as even law enforcement experts on motorcycle clubs, like ATF

---

[1] Counsel disagrees with this methodology and the conclusions. For the purpose of this lawsuit, this information is provided to show that even among law enforcement experts, Medrano should not be considered a "criminal street gang member."

Agent Pearson who is a court-recognized expert that only testifies for the State of Texas, would not conclude that members of the Leathernecks Motorcycle Club are gang members. Texas Penal Code §71.01(d) provides that "'criminal street gang' means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." While the Leathernecks Motorcycle Club has three or more members with a common identifying sign or symbol, it does not continuously or regularly associate in criminal activities, nor does the Bexar County Sheriff's Office have any reason to believe that the Leathernecks continuously or regularly engage in criminal activities.

29.    Medrano's inclusion in the TXGANG database was done without regard to any law enforcement standards or intelligence/information. It was done without affording Medrano Due Process to challenge the inclusion before or after it was made. The Bexar County Sheriff's Office failed to inform Medrano of any legal process he could follow to request his removal from the database.

30.    Further, assuming that Deputy Luna inputted Medrano into the gang database based on a sticker on his motorcycle, the statutory criteria for putting someone into the gang database requires more than mere use of words and symbols. Texas Code of Criminal Procedure article 67.054(b)(2)(C) requires that **two** of the criteria be met before inputting the person. There was not a second criteria to support Medrano's inclusion into the database.

31.    Bexar County Sheriff's Office refusal to remove him from the TXGANG database means that any time Medrano's identification is checked by security or law enforcement, he will appear to be in a criminal street gang, affecting his reputation, right to carry a handgun in his vehicle, right to privacy during traffic stops, ability to get a job, or even get onto a military base when Medrano

spent nine years in the Marines and served his country in combat in Iraq.

*Unconstitutionality of Articles 67.054, 67.202 & 67.203*

32.     Texas Code of Criminal Procedure sets forth Submission Criteria for law enforcement to use when determining whether to input someone's information into the TXGANG database. Tex. Code. Crim. Proc. Art. 67.054. To input someone into the gang database, law enforcement may use a court judgment that includes a finding that the person committed the crime as a member of a criminal street gang, an admission in a judicial proceeding that the person admits to being in a criminal street gang,[2] or any **two** of the following:

I.     A self-admission by the individual of criminal street gang membership that is not made during a judicial proceeding, including the use of the Internet or other electronic format or medium to post photographs or other documentation identifying the individual as a member of a criminal street gang;

II.    an identification of the individual as a criminal street gang member by a reliable informant or other individual;

III.   a corroborated identification of the individual as a criminal street gang member by an informant or other individual of unknown reliability;

IV.    evidence that the individual frequents a documented area of a criminal street gang and associates with known criminal street gang members;

V.     evidence that the individual uses, in more than an incidental manner, criminal street

---

[2] These first two criteria related to official court proceedings, wherein the person had counsel, the right to subpoena witnesses, cross-examine witnesses, and other procedural safeguards, are not challenged in this lawsuit.

gang dress, hand signals, tattoos, or symbols, including expressions of letters, numbers, words, or marks, regardless of how or the means by which the symbols are displayed, that are associated with a criminal street gang that operates in an area frequented by the individual;

VI.   evidence that the individual has been arrested or taken into custody with known criminal street gang members for an offense or conduct consistent with criminal street gang activity; among other criteria. Tex. Code Crim. Proc. Art. 67.054(b)(2)(C)(i)-(vi).

33.   These Submission Criteria allow law enforcement to stigmatize people as criminal street gang members based on hearsay of informants – both reliable and unreliable. These criteria allow law enforcement to stigmatize people as gang members based on law enforcement interpretation of tattoos, symbols, letters, numbers, words, marks, regardless of how they are made.

34.   For Article 67.054(b)(2)(C)(i-viii), law enforcement may stigmatize someone as a gang member without an official judicial finding or any associated court proceeding. Further, they can stigmatize without any evidence that the person has been involved in a crime.

35.   While Texas Penal Code §71.01(d) defines a "criminal street gang" as three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities," the Submission Criteria for being input into the gang database are much broader than that definition. It allows for people who merely "associate" with those in a criminal street gang to be input into the database. In other words, someone who has never been arrested for any offense, nor has ever been in a gang, may be input into the gang database because he "associates" with someone that law enforcement has classified as

a member of a criminal street gang. The dictionary defines "associate" as "to keep company with."[3]
For example, undersigned counsel has an associational relationship with Medrano, who is in the
gang database. And, counsel attached an exhibit showing the "heart cookie" patch to the original
complaint in this case. Based on association and use of symbols, may counsel be input into the gang
database?

36.     The statute does not allow for any pre-deprivation process before law enforcement inputs the
person into the gang database. Instead, it allows for post-deprivation process, wherein the person
must request that the head of the law enforcement agency review whether reasonable suspicion
exists to believe that the information relating to the Submission Criteria is accurate and that it
complies with the requirement that it must be relevant to the identification of an organization that is
reasonably suspected of involvement in criminal activity. Tex. Code Crim. Proc. Art. 67.202(a)(1-
2).

37.     Article 67.202 does not provide the challenger a way of reviewing the reason why he was
input into the database in the first place, nor a way to challenge the veracity of the information. If,
after a secret review of the information, the agency head decides not to remove the person from the
gang database, the agency head is supposed to inform the person in writing of that decision and
inform the challenger of his right to file a petition in the district court for judicial review.

38.     Judicial review, however, is just a more expensive version of the "process" in Article 67.202.
In Article 67.203, the person can file a petition in the district court, incurring the typical filing fee of
over $300, so that a judge can secretly review the same material the agency head reviewed, without

---

[3] Merriam-Webster, Webster's Ninth New Collegiate Dictionary 110 (1987).

disclosing the material to the petitioner. The petitioner is not permitted to call witnesses, cross-examine the state's witnesses, or otherwise engage in a meaningful challenge of his inclusion into the gang database. *See* Article 67.203(b)-(e). The judge is statutorily barred from disclosing the information to the petitioner. Without knowing what material the judge is looking at, the petitioner cannot challenge the veracity of any of the information the judge is reviewing. Note, there is no requirement in the statute that the material the judge views *in camera* be sworn, verified, or subject to penalty for perjury.

39.     Worse, however, the standard of review for the state district court judge is merely "reasonable suspicion." Tex. Code Crim. Proc. Art. 67.203(b)(1). To convict someone of the offense of speeding and assess a few hundred dollars fine, the standard is Beyond a Reasonable Doubt. To find someone negligent in a car accident and award monetary damages to the injured party, the standard is a Preponderance of the Evidence. To suspend someone's driver's license for 90 days after they were arrested for DWI, the standard is Probable Cause. The undersigned can find no use of the "reasonable suspicion" standard to deprive someone of money or any other right or privilege in a court proceeding, other than the gang database statute with its associated 5-year stigma.

40.     Indeed, Texans receive more procedural protections – evidentiary hearings, cross-examination, discovery - before their driver's licenses are suspended after an arrest for driving while intoxicated than one does before incurring a 5-year stigma of being classified as a gang member. *See* Tex. Trans. Code, Chapter 524 – Administrative Suspension of Driver's License for Failure to Pass Test for Intoxication.

41.     Article 67.054 gives law enforcement unbridled discretion to input individuals into the gang database based on vague criteria that do not require any proof of criminal activity. Articles 67.202

13

and 67.203 fail to provide Due Process to challenge one's inclusion into the gang database after it has been made. The stigma of being in the gang database chills Medrano's right to associate, affects his Second Amendment right to carry a handgun in his vehicle, and affects his right to privacy during traffic stops, supplying automatic reasonable suspicion to frisk him for weapons.

## Causes of Action

42.     Plaintiff incorporates by reference all the foregoing paragraphs, and asks that insofar as the following theories of liability include additional factual allegations, those allegations be taken as true, and further alleges as follows:

43.     Defendant Sheriff Salazar, the policy maker for the Bexar County Sheriff's Office, was deliberately indifferent to the rights of citizens in failing to properly train his deputies as to what is, and what is not, a criminal street gang for the purposes of the TXGANG database, and this lack of training caused Plaintiff to be input into TXGANG without any reason to believe he is a member of a criminal street gang, violating Plaintiff's right to associate protected by the First Amendment, as well as his right to substantive and procedural Due Process.

44.     Defendant Sheriff Salazar, the policy maker for the Bexar County Sheriff's Office, was deliberately indifferent to the rights of citizens in failing to properly train his deputies as to the two Submission Criteria requirement under 67.054(b)(2)(C), and this lack of training caused Plaintiff to be input into TXGANG based on a single criteria from Article 67.054(b)(2)(C)(v) without an additional criteria to support his inclusion into the database. This violated Plaintiff's right to procedural and substantive Due Process and his First Amendment protected right to associate.

45.     Defendant Sheriff Salazar, the policy maker for the Bexar County Sheriff's Office, was deliberately indifferent to the rights of citizens in failing to properly train his deputies as to the legal

process when someone challenges their improper inclusion into the TXGANG database, causing Plaintiff to remain in the database after notifying Bexar County Sheriff's Office of its impropriety. Plaintiff was never notified that the agency head approved his inclusion in the database after he challenged it in 2016, nor was he notified of his right to judicial review by the Bexar County Sheriff's Office. This violated Plaintiff's right to procedural and substantive Due Process.[4]

### Declaratory Relief

46.     Plaintiff realleges the material facts stated in the preceding paragraphs against Defendant. Plaintiff seeks a declaration pursuant to 28 U.S.C. §2201 that

     A.     Defendant's failure to train deprived Plaintiff of Substantive and Procedural Due Process by

          i.     allowing for Plaintiff's input into the database when he was not a member of a criminal street gang,

          ii.     allowing for Plaintiff's input into the database when he could only arguably have met one of the two required criteria of Article 67.054(b)(2)(C),

          iii.     allowing for Plaintiff's input into the database when the information was not relevant to the identification of an organization that is reasonably suspected of involvement in criminal activity,

          iv.     refusing to remove Plaintiff from the database,

          v.     failing to inform Plaintiff that an agency head upheld his inclusion in the database, and

---

[4] When a state gives its citizens a privilege, it may not deprive its citizens of the privilege without Due Process. *See Bell v. Burson*, 402 U.S. 535 (1971).

vi.    failing to inform Plaintiff of the availability of judicial review.

B.    Plaintiff's previous association with the Leathernecks Motorcycle Club was protected by the right to associate in the First Amendment.

C.    Chapter 67 of the Texas Code of Criminal Procedure

    i.    is unconstitutionally vague and overbroad by attaching a 5-year stigma to mere association with someone in a criminal street gang,

    ii.    is unconstitutionally vague and deprives Texans of Due Process for its use of "association" in Article 67.054(b)(2)(C)(iv) and (v),[5]

    iii.    violates the First Amendment by permitting a stigma to attach based on mere association alone without regard to criminal activity, and

    iii.    deprives those input into Texas's gang database of Due Process because the post-deprivation process amounts to no process at all.

D.    Plaintiff's current status in the gang database violates the First Amendment and Due Process.

### Damages

47.    Plaintiff seeks declaratory relief.

### Demand for Jury Trial

48.    Plaintiff respectfully requests a jury trial for any factual disputes.

---

[5] Plaintiff has a right to be free from arbitrary enforcement of laws that are unconstitutionally vauge, resulting in enforcement that is imprecise or that involve so many factors that the outcome under the law is unclear or unenforceable. *Cline v. Frink Dairy Co.*, 274 U.S. 445, 465 (1927).

**Relief**

In light of the foregoing, Plaintiff requests Judgment against the Defendant as follows:

1.  Reasonable costs, expenses, and attorney's fees pursuant to 42 U.S.C §1988(b), expert fees pursuant to 42 U.S.C. §1988(c);

2.  A declaration that Defendant violated Plaintiff's Constitutional rights, pursuant to 28 U.S.C. §2201;

3.  A declaration that the statute is unconstitutional, and

4.  All such other relief to which Plaintiff is entitled.

Respectfully Submitted,
JASON MEDRANO, PLAINTIFF

By:
/s/ Millie L. Thompson
Millie L. Thompson
Texas State Bar Number:  24067974
*The Law Office of Millie L. Thompson*
1411 West Ave., Ste. 100
Austin, Texas 78701
Telephone: (512) 293-5800
Fax: (512) 682-8721
Email: millieaustinlaw@gmail.com

**Notice of Electronic Filing**

I, Millie Thompson, do hereby certify that on this the 10th day of July 2019, I have electronically submitted for filing, a true and correct copy of the above document in accordance with the Electronic Case Files System of the Western District of Texas.

/s/  *Millie L. Thompson*
Millie Thompson, Plaintiff's Attorney

17

**Certificate of Service**

I, Millie Thompson, do hereby certify that on this the 10th day of July 2019, a true and correct copy of this Plaintiff's First Amended Complaint was served opposing counsel as follows:

Hon. Joe Gonzales, District Attorney
Bexar County, Texas
Pamela Bell, ADA
101 W. Nueva, 7th Floor
San Antonio, Texas 78205
(210) 335-2170
F (210) 335-2773
Pamela.Bell@bexar.org

/s/  *Millie L. Thompson*
Millie Thompson, Plaintiff's Attorney

**Certificate of Conference**

I, Millie Thompson, do hereby certify that I conferenced with ADA Pamela Bell by email and she is **opposed** to the addition of, and change to, causes of action related to Sheriff Salazar and Bexar County.

/s/  *Millie L. Thompson*
Millie Thompson, Plaintiff's Attorney

18