# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

JASON MEDRANO,

        Plaintiff

v.                                                                    No. 5:19-cv-00549-JKP

HON. JAVIER SALAZAR, in his official
capacity as Sheriff of Bexar County,

        Defendant

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is *Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(1) & 12(b)(6)* (ECF No. 17) to which Plaintiff responded (ECF No. 19) and Defendant replied (ECF No. 20). This action arises from the alleged improper submission of Jason Medrano to the Texas law enforcement gang database. Defendant Javier Salazar moves the Court to dismiss Plaintiff Medrano's First Amended Complaint (ECF No. 16) for failure to establish standing and for failure to state a claim under 42 U.S.C. § 1983. For the reasons that follow, the Court grants in part and denies in part Defendant's Motion.

## I. FACTUAL ALLEGATIONS

The following facts are derived from Jason Medrano's ("Medrano") First Amended Complaint and are taken as true in the light most favorable to Medrano for the purpose of evaluating the subject motion to dismiss.

Medrano is a former Marine who served our country for nine years including combat in Iraq. ECF No. 16 ¶ 31. During his service he received several commendations and medals. *Id.* ¶ 7. Medrano lives in San Antonio with his wife and three children. *Id.* ¶ 12. An electrician by trade, Medrano worked for eight years in the private sector before accepting a position at Fort

Sam Houston, Joint Base San Antonio; a process that was made more difficult by his improper inclusion in the Texas law enforcement gang database ("TXGANG database"). *Id.* ¶¶ 12-19.

In December 2015, Medrano was pulled over for a traffic code violation by Bexar County Sheriff Deputy Luna. *Id.* ¶ 6. Medrano was riding a motorcycle and wearing a vest with a variety of patches including one representing the Leathernecks and one representing the Marine Corps. *Id.* At that time, Medrano was in the Leathernecks Motorcycle Club,[1] a family orientated Club that brings together veterans—active, released, retired, disabled—who enjoy riding motorcycles. *Id.* ¶ 7; http://www.leathernecksmc.com/motorcycle_club_description.htm (last visited Feb. 5, 2020). Marines, Fleet Marine Force Corpsmen, and their family members and friends are welcome in the Club. *Id.* Together, club members engage in a variety of community activities, including charitable works, such as collecting toys for Toys for Tots, helping veterans organizations, and contributing to disaster aid and relief. ECF No. 16 ¶ 7.

Deputy Luna told Medrano that he was putting Medrano into the TXGANG database because of a sticker that was on Medrano's motorcycle, even though Medrano attempted to explain to Deputy Luna that the Leathernecks Motorcycle Club is not a 'support club' of any criminal street gangs, but a club for veterans who served in the Marines. *Id.* ¶¶ 8-9. Nonetheless, Deputy Luna persisted and Medrano's name was added to the TXGANG database. *Id.* ¶ 9. The TXGANG database is a statewide repository of records related to criminal street gangs and gang members by which law enforcement agencies identify and track gang members in Texas. *Id.* ¶ 32. The Leathernecks Motorcycle Club is not a criminal street gang. *Id.* ¶ 5.

---

[1] leatherneck \ ˈle-thər-ˌnek \ n. [fr. the leather collar formerly part of the uniform] (ca. 1914): a member of the U.S. Marine Corps. Merriam Webster's Collegiate Dictionary 663 (10th ed. 1995).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

When presented with a motion to dismiss under Rule 12(b)(6), a court generally "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face[.]" *United States v. Bollinger Shipyards Inc.*, 775 F.3d 255, 257 (5th Cir. 2014) (internal citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must

establish more than a "sheer possibility" a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679. Where a plaintiff's factual allegations do not provide enough information to "nudge a claim across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is generally limited to the complaint and any documents attached to the motion to dismiss referred to in the complaint and central to the plaintiff's claims. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation marks omitted) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

### III. DISCUSSION

By this action, Medrano asserts a claim against Sheriff Javier Salazar ("Salazar") in his official capacity for failure to properly train the deputies under his command on the criteria required before submitting to the TXGANG database persons suspected of being criminal street gang members. ECF No. 16 ¶¶ 42-45. Medrano challenges his inclusion in the TXGANG database and the constitutionality of the Articles that provide the statutory authority for individuals to be identified and submitted to the TXGANG database. *Id.* at 6-7, 10-14. Medrano seeks declaratory relief that (1) Sheriff Salazar's failure to train his deputies as to the submission criteria requirements for the TXGANG database deprived Medrano of substantive and procedural due process; (2) Medrano's previous association with the Leathernecks Motorcycle

Club is protected by the First Amendment; (3) Texas Code of Criminal Procedure Article 67.054(b)(2)(C) is unconstitutionally vague and overbroad; (4) Medrano's inclusion in TXGANG database was improper because it violates his right to associate and attaches a stigma with legal disabilities. *Id*. ¶ 46. By his motion, Sheriff Salazar asks the Court to dismiss all of Medrano's claims (1) for failure to establish standing; (2) for failure to state a claim under 42 U.S.C. § 1983; and (3) because his claim is barred by Eleventh Amendment immunity. ECF No. 17 at 6-17.

**1. Objection**

Medrano asserts Salazar improperly included extraneous facts in his Motion to Dismiss. Should the Court elect to consider these facts, Medrano moves the Court to convert Salazar's Motion to a motion for summary judgment, delay ruling, and provide time for discovery. The Court's review was conducted pursuant to the legal standards set forth above. Accordingly, Medrano's objection is noted and denied.

**2. 28 U.S.C. § 2201**

The Declaratory Judgment Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The Act "creates a remedy, not a cause of action," *Buck v. American Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007), and where there exists an underlying "*judicially remediable right*" federal courts have broad discretion to grant or refuse declaratory judgment. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (emphasis added).

"When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The court must ask (1) whether the declaratory action is justiciable; (2) whether the court has authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix*, 212 F.3d at 895).

With respect to the first factor, a justiciable action seeks to resolve an "actual controversy." *Id.* Generally, an actual controversy exists when "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Orix*, 212 F.3d at 896. Although "[d]eclaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts . . ., declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit." *Id.* Consequently, a plaintiff can show a case is justiciable if he establishes "actual present harm or a significant possibility of future harm." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) (internal citations omitted). Medrano's Amended Complaint alleges that he "is not now, nor has he ever been, a member of a criminal street gang." ECF No. 16 ¶ 4. Yet, Deputy Luna submitted Medrano's name to the TXGANG database, classifying him as a gang member. Further, Deputy Luna's submission was based on a single criterion—a sticker on Medrano's motorcycle—rather than the two criteria required by Art. 67.054(b)(2)(C). ECF No. 16 ¶¶ 7, 8. Medrano contends his inclusion in the database was a failure of training—Sheriff Salazar failed to train Deputy Luna regarding the requirements of the Article—and that failure rises to a civil rights violation under 42 U.S.C. § 1983. Medrano's Amended Complaint also shows that persons listed in the TXGANG database are prohibited from carrying firearms in their vehicles, Texas law

enforcement is effecting arrests on that basis, and Texas district attorneys are pursuing convictions. ECF Nos. 16 ¶ 6; 19 at 8; 19-1. As a gun owner improperly listed in the TXGANG database, Medrano alleges he is at risk of being arrested when carrying his firearm in his vehicle. Additionally, Article 67.203 provides for judicial review of an agency head's refusal of a request to remove an individual from the database. Tex. Code Crim. Proc. Art. 67.203. Accordingly, Medrano has sufficiently alleged a justiciable action. *Id.*

As for the second factor, whether this Court can grant declaratory relief, jurisdiction is conferred by 28 U.S.C. § 1343(a)(3) and (4), which provides for jurisdiction of the federal courts in all suits authorized by 42 U.S.C. § 1983, under which a claimant may seek declaratory relief. *See Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 673 (2010) (section 1983 suit brought for violations of First and Fourteenth Amendments sought injunctive and declaratory relief); *Sandin v. Conner*, 515 U.S. 472, 476 (1995) (complaint predicated on 42 U.S.C. § 1983 prayed for injunctive relief, declaratory relief, and damages for, among other things, a deprivation of procedural due process). Hence, the Court has the authority to grant declaratory relief and the second factor is satisfied.

As to whether this Court should exercise its discretion to hear a declaratory judgment action, the Fifth Circuit provides the following factors for the Court's consideration:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated,
> 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant,
> 3) whether the plaintiff engaged in forum shopping in bringing the suit,
> 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist,
> 5) whether the federal court is a convenient forum for the parties and witnesses,[ ]
> 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, and . . .

7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 164 (5th Cir. 2015) (citations omitted). Here, the Court has not been made aware of any pending state action; it is not apparent that the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; there have been no assertions of forum shopping; the Court is not aware of possible inequities; this Court is a convenient forum for the parties and witnesses and serves judicial economy; and no state judicial decree has been presented. Thus, there is no reason why the Court should decline to exercise its discretion to hear this action and the third factor is satisfied.

### 3. Standing

Salazar contends Medrano lacks standing because his Amended Complaint "demonstrates neither injury-in-fact nor causation." ECF No. 17 at 6. Specifically, Salazar asserts Medrano "fails to identify a single injury-in-fact he has suffered as a direct consequence of the alleged constitutional error." *Id.* "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501 (1975). A plaintiff satisfies the injury-in-fact requirement by alleging a credible threat of enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). "[T]o demonstrate that a case or controversy exists to meet Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)). "At the pleading stage, general factual allegations of injury resulting from the

defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 889 (1990)). Medrano alleges his improper inclusion in the TXGANG database injures him by: (1) chilling his right to associate under the First Amendment; and (2) attaching a stigma with legal disabilities under the Fourteenth Amendment's Due Process Clause. ECF No. 16 ¶¶ 5, 20, 41.

**a. First Amendment Right to Associate**

The First Amendment protects an individual's "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). These associational rights take two forms: (1) "intimate human relationships," such as marriage and family; and (2) groups, whose members "regularly engage in a variety of civic, charitable, lobbying, fundraising, and other activities." *Id.* at 618, 627. A state is prohibited from denying an individual citizen "rights and privileges solely because of [his] association with an unpopular organization." *Healy v. James*, 408 U.S. 169, 186 (1972). "[G]uilt by association alone, without [establishing] that an individual's association poses the threat feared by the Government, is an impermissible basis upon which to deny First Amendment rights." *Id.* (internal quotation marks omitted).

"An association must merely engage in expressive activity that could be impaired in order to be entitled to protection." *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 655 (2000); *see also Hudson v. City of Los Angeles*, No. CV-06-942-DSF, 2006 WL 4729243, at *7 (C.D. Cal. Sept. 7, 2006) (citing *Christian Legal Society v. Walker*, 453 F.3d 853, 862 (7th Cir. 2006) ("It goes without saying that a group must engage in expressive association in order to avail itself of

the First Amendment's protections for expressive association.")). A plaintiff plausibly alleges a violation of his First Amendment rights by showing that the defendant's action had a "deterrent, or 'chilling' effect" on the plaintiff's expressive activity. *Laird v. Tatum*, 408 U.S. 1, 11 (1972). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.*, 408 U.S. at 14.

Thus, to plausibly allege a violation of his right to associate, Medrano must identify the viewpoints advocated by the Leathernecks (expressive activity) and how inclusion in the gang database prevents him from participating in those expressive activities (objective chilling effect).[2] Medrano alleges the Leathernecks engage "in a variety of community activities, including charitable works, like Toys for Tots, helping Veterans Organizations, Disaster Aid and Relief, and other community involvement." ECF No. 16 ¶ 7. Medrano further alleges he left the club at least two years prior to filing this lawsuit. *Id.* ¶ 15. Medrano's First Amended Complaint therefore stops short of showing that his inclusion in the database has objectively chilled his freedom to associate. Accordingly, the Court dismisses Plaintiffs right-to-associate claim with leave to amend.

**b. Due Process and Second Amendment (Stigma-Plus)**

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Paul v. Davis,* 424 U.S. 693, 708 (1976) (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971)). Hence, "where the State attaches 'a badge of infamy' to the citizen, due process comes into play." *Paul,* 424 U.S. at 707 (quoting *Wieman v. Updegraff,* 344 U.S. 183, 191 (1952)). For

---

[2] Alternatively, a plaintiff's allegation that his conduct is regulated, constrained, or compelled by the statute at issue may adequately allege a chilling effect sufficient to establish injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419-420 (2013) (citations omitted). Medrano's First Amended Complaint does not appear to purport such allegation.

this reason, "damage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983." *Tex. v. Thompson,* 70 F.3d 390, 392 (5th Cir. 1995) (citing *Paul,* 424 U.S. at 710-12). A plaintiff may bring a § 1983 due process claim under a "stigma plus infringement" theory by showing a stigmatizing statement plus a deprivation of a "life, liberty, or property interest." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991).

"With regard to the stigma element, courts look to whether the government has publicly stigmatized an individual such that his 'good name, reputation, honor, or integrity' has been called into question." *Pedrote-Salinas v. Johnson*, No. 17 C 5093, 2018 WL 2320934, at *5 (N.D. Ill. May 22, 2018). A plaintiff sufficiently alleges stigma by showing the statement is "false and assert[s] some serious wrongdoing on the part of the plaintiff." *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) (citations omitted). Medrano alleges he is an honorably discharged and decorated former Marine, works as an electrician on a military base, and "is not now, nor has he ever been, a member of a criminal street gang." ECF No. 16 ¶¶ 4, 7, 19. Yet, Deputy Luna submitted Medrano's name to the TXGANG database, classifying him as a gang member, and Salazar refuses to remove Medrano from the database. Medrano alleges during the interview process for his job on the military base, each time he passed through the visitor center to obtain a visitor pass, he was initially refused because his name appeared in the TXGANG database. Only after he explained he was not in a gang, he was formerly in the Leathernecks Motorcycle Club, and he was a Marine, would staff issue the visitor pass.[3] *Id.* ¶¶ 14, 19. Thus,

---

[3] A stigmatizing label can be sufficiently public even when the government shares it only with other governmental entities and agencies on a "need to know" basis. *Pedrote-Salinas,* 2018 WL 2320934, at *5 (finding that defendants' sharing of plaintiff's gang-member designation with immigration officials was sufficiently public to meet the first prong of the stigma-plus test); *Larry v. Lawler,* 605 F.2d 954, 958 (7th Cir. 1978) (finding the Civil Service Commission's sharing of plaintiff's stigmatizing label with federal agencies on a need to know basis was sufficiently public); *Castillo* v. *Cty. of Los Angeles,* 959 F.Supp.2d 1255, 1261-62 (C.D. Cal. 2013) (finding

Medrano's pleading satisfies the stigma prong, because being improperly included in a "gang database carries with it the stigma of being a gang member, which is tied to a host of unfortunate implications such as involvement in criminal conduct. There is no question that being labeled a gang member harms one's reputation." *Pedrote-Salinas*, 2018 WL 2320934, at *5.

Infringement is sufficiently alleged where a plaintiff shows "the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or one of the incorporated provisions of the Bill of Rights." *State v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995) (citing *Kacal*, 928 F.2d at 701-02). Medrano alleges his Second Amendment right to carry a handgun in his vehicle is infringed by his improper inclusion in the TXGANG database. ECF No. 16 ¶¶ 5, 20, 41. Applied to the states through the Fourteenth Amendment, the Second Amendment "encompasses a right to carry firearms openly in public for self-defense." *Young v. Hawaii*, 896 F.3d 1044, 1055, 1070 (9th Cir. 2018) ("the right to carry a firearm openly for self-defense falls within the core of the Second Amendment"). *See also NRA of Am., Inc. v. McCraw*, 719 F.3d 338, 346 n.6 (5th Cir. 2013) ("Second Amendment right is fully applicable to the states through the Fourteenth Amendment") (citing *McDonald v. City of Chi.,* 561 U.S. 742, 778 (2010)); *District of Columbia v. Heller,* 554 U.S. 570, 627 (2008) ("the inherent right of self-defense has been central to the Second Amendment right"). However, the right to keep and bear arms is not unlimited; certain categories of persons may be lawfully prohibited from carrying firearms. *Heller,* 554 U.S. at 626-27, n.26.

Under Texas law, criminal street gang members are prohibited from carrying any firearm in public, including in a vehicle. Tex. Penal Code § 46.02(a-1)(2)(C). A "criminal street gang" is "three or more persons having a common identifying sign or symbol or an identifiable leadership

plaintiff's inclusion in Child Welfare Services Case Management System sufficiently public where information in the database was not publicly available but was available to numerous in-state and out-of-state governmental entities and agencies).

who continuously or regularly associate in the commission of criminal activities." *Id*. § 71.01(d). An individual can be labeled a "criminal street gang member" by virtue of being listed in the TXGANG database. ECF No. ¶¶ 14, 19. Consequently, it appears an individual who is listed in the TXGANG database as "criminal street gang member" can be arrested for carrying a weapon in a vehicle and charged with a Class A misdemeanor. Tex. Penal Code § 46.02(a-1)(2)(C) and (b). Consequently, Medrano has alleged sufficient facts to establish his liberty is impinged by his improper inclusion in the TXGANG database. Thus, the infringement prong of the "stigma plus infringement" theory is satisfied. *Kacal*, 928 F.2d at 701.

Construing Medrano's Amended Complaint in his favor, his "stigma-plus" claim presents an actual controversy because his allegations of future injury sufficiently establish that there is a substantial risk that harm will occur. Specifically, Medrano pleaded sufficient facts demonstrating he faces a credible threat of prosecution under § 46.02 (a-1)(2)(C) of the Texas Penal Code for carrying his firearm in his vehicle. *See* ECF Nos. 16 ¶ 20; 19 at 11 (referencing pending state cases brought pursuant to Tex. Penal Code § 46.02(a-1)(2)(C) and noting that "Salazar does not contend that Medrano may lawfully carry a firearm in his vehicle without regard to his inclusion in the gang database. Nor does Salazar argue that his department would not make an arrest for unlawful carry under these circumstances."). Consequently, as the situation stands, Medrano's only options are to leave his firearm at home or to risk arrest under § 46.02(a-1)(2)(C). *See Frye v. Anadarko Petro. Corp.*, No. 18-20543, 2019 WL 7374806, *8 (5th Cir. 2019) (where the plaintiff's only options were to stay silent or to disclose a letter and risk liability, the Fifth Circuit found the dispute appeared to be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

Accordingly, the Court denies Salazar's motion to dismiss the action for lack of standing. Medrano has standing to pursue prospective relief in the form of a declaratory judgment that maintaining his name on the TXGANG database, despite the State's knowledge that he is not a gang member, would be a violation of Medrano's right to due process.

## 4. Section 1983: Failure to Train

Salazar contends Medrano's "failure to train claims fail because they are nothing more than the 'unadorned, the-defendant-unlawfully-harmed-me accusations,' which are insufficient to withstand 12(b)(6) challenges." ECF No. 17 at 2. Specifically, Salazar argues Medrano has "not identified or alleged facts sufficient to identify a specific policy, statement, ordinance or, regulation or decision;" has insufficiently pled deliberate indifference; and "has not pleaded the minimal elements of a failure to train claim, and indeed, fails to provide fair notice to Defendant." *Id*. at 14-15.

The Supreme Court in *Monell*, held that a local government entity may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom—whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy—inflicts the injury, that the government as an entity is responsible under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (local governments are responsible only for their own illegal acts). An official-capacity suit is aimed against the employing governmental entity, not the individual officer.[4] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Because the real

---

[4] Police and sheriff's departments are governmental subdivisions without capacity for independent legal action. *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991). For this reason, the Bexar County Sheriff's Office is not a legal entity capable of being sued. *Id*.; *see Ramirez v. Bexar Cty.*, No. SA-10-CV-0296 FB (NN), 2010 WL 2555143, at *2 (W.D. Tex. June 21, 2010) ("Bexar County has not given the Sheriff's Office jural authority. As such, the Bexar County Sheriff's Office lacks the capacity to sue or be sued."). Accordingly, the governmental entity in this case is Bexar County.

party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotation marks omitted)). To establish a municipality's liability under Section 1983, a plaintiff must show the municipality had an inadequate custom or policy in place that acted as the moving force behind a constitutional violation. *See Forgan v. Howard Cty., Tex.*, 494 F.3d 518, 522 (5th Cir. 2007) (citing *Monell*, 436 U.S. at 690-91).

"[U]nder certain circumstances, § 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." *Brown v. Bryan Cty.*, 219 F.3d 450, 459 (5th Cir. 2000). "[W]ith respect to specific officers, a need for more or different training can be so obvious and the inadequacy of training so likely to result in a violation of constitutional rights that the city can reasonably be said to have been deliberately indifferent to the need for training." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The Fifth Circuit has recognized this single incident exception only when the plaintiff shows "that the highly predictable consequence of the failure to train or supervise resulted in the exact injury suffered by the plaintiff, and that this failure to train or supervise was the moving force that had a specific causal connection to the constitutional injury." *Thomas v. Prevou*, 2008 WL 111293 at *7 (S.D. Miss. Jan. 8, 2008) (citing *Bryan Cty.*, 219 F.3d at 461). "[T]he focus must be on whether the [training] is adequate to the tasks the particular employees must perform. . . . the identified deficiency in the training program must be closely related to the ultimate injury." *Canton,* 489 U.S. at 390.

Medrano identifies Salazar, as Bexar County Sheriff, as the official to whom the failure to train is attributable. Medrano's Amended Complaint alleges Salazar was deliberately

indifferent to the rights of citizens by failing to properly train Bexar County Deputy Luna as to the two-criteria requirement under Art. 67.054(b)(2)(C). Subsections (b)(2)(A), (B), and (C) read, in part, that the criminal information collected relating to a criminal street gang must consist of (A) a judgment that includes a specific finding; or (B) a self-admission made during a judicial proceeding; or (C) *any two* of eight enumerated criteria. Tex. Code Crim. Proc. Art. 67.054(b)(2)(A-C) (emphasis added); *see* ECF No. 16 ¶¶ 43-45. Medrano alleges that Deputy Luna improperly input Medrano into the TXGANG database on a single criterion, rather than the two criteria required by Art. 67.054(b)(2)(C). *Id.* ¶¶ 29-31. Medrano also complains of Sheriff Salazar's failure to remove him from the database, stating:

> Medrano attempted to file a complaint against Deputy Luna with the Internal Affairs Division of the Bexar County Sheriff's Office. In January of 2016, he was permitted to write a statement, and representatives of Bexar County Sheriff's Office IAD indicated that someone would get back with him.

> A few days later, a lieutenant with the sheriff's office called Medrano on the telephone, asking if Medrano wanted Deputy Luna to receive a verbal or written warning. Medrano indicated he preferred written. Medrano has not heard from the sheriff's office since that January 2016 phone call regarding the status of that IA complaint. Bexar County Sheriff's Office did not inform Medrano of any additional steps he should take regarding his inclusion into the TXGANG database. He was not informed that he could take any further legal action to force his removal from the database.

> After his trouble getting on base on April 30, 2019, Medrano contacted the Texas Department of Public Safety to ask for his removal from the TXGANG database. They sent him to the Bexar County Sheriff's Office. The Bexar County Sheriff's Office records section referred Medrano back to DPS. Then, Medrano tried to contact the Internal Affairs Division of the Bexar County Sheriff's Office. Someone there told him that they would take his information and get back to him. When they did not call him, Medrano contact IA again on May 15, 2019 and was told that someone from the gang unit said he must wait 5 years for his name to "fall off" the database. He was not informed of any other legal process he may undertake to have his information removed from the database.

ECF No. 16 ¶¶ 10-11, 21, 31. Medrano further contends that this lawsuit gives Salazar notice that Medrano is making a request for removal from the database. ECF No. 19 at 4-5.

Texas Government Code defines an agency head as "the appointed or elected official who serves by the state constitution, state statute, or action of the governing body of a state agency as the chief executive and administrative officer of a state agency." Tex. Gov't Code § 441.180(1). Texas Code of Criminal Procedure Article 67.202 provides the procedure for challenging one's inclusion in the TXGANG database. The procedure directs "the head of the agency or the designee of the agency head" to review the criminal information collected to determine if "(1) reasonable suspicion exists to believe that the information is accurate; and (2) the information complies with the submission criteria established under Article 67.054(b)." Further, if it is determined that reasonable suspicion does not exist, the agency must destroy the records and "notify the department and the person who requested the review of the agency's determination and the destruction of the records." Where it is found that reasonable suspicion exists, "the agency shall notify the person who requested the review: (1) of the agency's determination; and (2) that the person is entitled to seek judicial review of the agency's determination under Article 67.203." Tex. Code Crim. Proc. Art. 67.202. The Code of Federal Regulations directs "projects," such as the TXGANG database, that receive support under the Omnibus Crime Control and Safe Streets Act of 1968 to "maintain criminal intelligence information concerning an individual only if there is reasonable suspicion that the individual is involved in criminal conduct or activity and the information is relevant to that criminal conduct or activity." 28 C.F.R. §§ 23.1, 23.20(a).

As the elected Sheriff, Salazar is the "agency head" of the Bexar County Sheriff's Office. Thus, Medrano has properly alleged that Salazar is the policymaker to whom his *Monell* claims are attributable. With respect to Medrano's failure to train claim, to establish deliberate indifference, a plaintiff must plead facts that show a specific inadequacy in the training that

closely relates to the injury, which in this case is Medrano's improper inclusion in the TXGANG database. Medrano alleges Salazar's failure to train Deputy Luna "caused Plaintiff to be input into TXGANG without any reason to believe he is a member of a criminal street gang." ECF No. 16 ¶ 43. Specifically, Medrano alleges:

> [A]ssuming that Deputy Luna inputted Medrano into the gang database based on a sticker on his motorcycle, the statutory criteria for putting someone into the gang database requires more than mere use of words and symbols. Texas Code of Criminal Procedure Article 67.054(b)(2)(C) requires that two of the criteria be met before inputting the person. There was not a second criteria to support Medrano's inclusion into the database.

*Id.* ¶ 30.

The Texas Gang Intelligence Index (TXGANG) User Agreement, "made and entered into between the Texas Department of Public Safety (DPS), which is responsible for the maintenance of the Texas Gang Intelligence Index (TxGang), and the . . . Participating Agency" specifies that the Participating Agency agrees to:

> 1. If applicable, comply with the Department of Justice Criminal Intelligence Systems Operating Policies 28 Code of Federal Regulations Part 23, Chapter 67 of the Texas Code of Criminal Procedure and the TXGANG Operating Policies and Procedures in regards to, but not limited to, submission, query, dissemination, and retention of records, training, and terminal and data security.
>
> 2. Establish a written policy applicable to the participating agency on TXGANG issues such as, record submission, removal, quality control, validation, dissemination, and system security.

ECF No. 19-2. The Texas Department of Public Safety TXGANG Index, Operating Policies and Procedures, § C(3)(b), states: "The agency that originally submitted a TXGANG record is solely responsible for: modifying or deleting a record if the agency receives a final order of expunction or if the agency discovers it to be misleading, inaccurate, outdated, or otherwise no longer relevant." ECF No. 19 at 13; https://www.dps.texas.gov/txgangs/gangOPP.pdf (last visited Feb. 4, 2020). The Institute for Intergovernmental Research pamphlet covering 28 C.F.R. Part 23,

emphasizes training and states that only trained law enforcement employees should be making determinations about which individuals should be submitted to databases like TXGANG and "[t]he trained employee who makes the determination of reasonable suspicion should be able to articulate why the criminal subject meets this threshold criterion." *See* ECF No. 19 at 13; https://www.iir.com/Documents/28CFR/28cfrpart23overviewbrochure2015.pdf (last visited Feb. 3, 2019)).

Thus, it follows that a "highly predictable consequence" of Salazar's failure to train Deputy Luna on the criteria required by Art. 67.054(b)(2)(C) is the improper submission to the TXGANG database of an individual who is not a member of a criminal street gang. *Prevou*, 2008 WL 111293 at *7. Consequently, Medrano plausibly alleged facts that indicate a specific inadequacy in the training of Bexar County Sheriff's officers that closely relates to Medrano's improper inclusion in the TXGANG database. Accordingly, at this stage of the proceedings, Medrano has sufficiently alleged that his improper inclusion into the TXGANG database was caused by Salazar, who, while acting under color of state law, failed to train Deputy Luna as to the two-criteria requirement under Art. 67.054(b)(2)(C). The Court therefore denies Salazar's motion to dismiss Medrano's *Monell* claim. Medrano has standing to pursue prospective relief in the form of a declaratory judgment that Salazar's failure to train as to the two-criteria requirement under Art. 67.054(b)(2)(C), would be a violation of Medrano's right to due process. To the extent Medrano purports to seek judicial review of his inclusion in the TXGANG database, the Court grants leave to amend.[5]

---

[5] Article 67.203 provides the procedure for "judicial review of a determination made under Article 67.202(c)." Tex. Code Crim. Proc. Art. 67.203.

### 5. Eleventh Amendment

"The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (citations omitted). "Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution. A municipality is a "person" within the meaning of § 1983—one not entitled to Eleventh Amendment or qualified immunity." *Boyd v. City of Hous.*, 548 F. App'x 100, 103 (5th Cir. 2013) (citations omitted). Moreover, the Eleventh Amendment does not bar suits seeking declaratory relief against state officers. *Rosas v. Bexar Cty.*, No. SA-14-CA-1082-DAE, 2015 U.S. Dist. LEXIS 56753, at *19 (W.D. Tex. Jan. 31, 2015) (quoting *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 86 F. Supp.2d 617, 621 (W.D. Tex. 2000) (citing *Ex parte Young*, 209 U.S. 123 (1908))). Accordingly, the Court denies Salazar's motion to dismiss based on Eleventh Amendment immunity.

### 6. Pendant State Law Claims and Constitutionality Arguments

To the extent Salazar requests the Court dismiss any pendant state law claims, the Court denies the request at this stage of the proceedings. To the extent Medrano must amend his complaint to name any proper defendant with respect to his claims regarding constitutionality of the Articles at issue, the Court grants leave to amend. *See Okpalobi v. Foster*, 190 F.3d 337, 343-47 (5th Cir. 1999) (discussion on determining the proper defendant in a suit challenging constitutionality).

## IV. CONCLUSION

For the reasons stated herein, it is ORDERED that Defendant Sheriff Javier Salazar's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(1) & 12(b)(6) (ECF No. 17) is GRANTED IN PART, DENIED IN PART. The Motion is GRANTED as to Plaintiff Jason Medrano's right-to-associate claim under the First Amendment. The Motion is DENIED in all other respects.

It is further ORDERED that Plaintiff Jason Medrano shall have leave to amend his Amended Complaint to cure the pleading deficiencies noted herein.

It is so ORDERED.

SIGNED this 5th day of February 2020.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE